**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CHETHARITY OU,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, *Commissioner of Social Security*,<br><br>Defendant. | No. 1:26-cv-10308-JEK |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION**

**KOBICK, J.**

Plaintiff Chetharity Ou brings this action under the Social Security Act, 42 U.S.C. § 405(g), to challenge the final decision of the Commissioner of the Social Security Administration denying his concurrent applications for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI"). Ou contends that the Administrative Law Judge ("ALJ") erred by failing to adequately consider the supportability and consistency of the opinion of his healthcare provider, nurse practitioner Julie Gallagher, regarding his work limitations. Pending before the Court is the Commissioner's motion to affirm the ALJ's decision. That motion will be granted because the ALJ adequately explained how she considered the supportability and consistency of Gallagher's opinion when crediting in part and discrediting in part that opinion.

## BACKGROUND

### I. Statutory and Regulatory Framework.

The Social Security Administration administers the SSDI and SSI programs for certain individuals with disabilities. *See Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001) (citing 42 U.S.C.

§§ 423, 1381a). Under the Social Security Act, a claimant seeking benefits under either program must prove that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). That impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B). To determine whether a claimant is so impaired, the "ALJ employs a five-step test." *Sacilowski v. Saul*, 959 F.3d 431, 433 (1st Cir. 2020). That test proceeds as follows:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

*Seavey*, 276 F.3d at 5 (citing 20 C.F.R. § 416.920); *see* 20 C.F.R. § 404.1520. The analysis is the same for SSI and SSDI. *See Wright v. Barnhart*, 389 F. Supp. 2d 13, 20 n.8 (D. Mass. 2005) (citing *Bazile v. Apfel*, 113 F. Supp. 2d 181, 185 (D. Mass. 2000)).

A claimant's residual functional capacity ("RFC") measures "the most [he] can still do despite [his physical or mental] limitations." 20 C.F.R. § 404.1545(a)(1); *see Bowen v. City of New York*, 476 U.S. 467, 471 (1986) (RFC "measures the claimant's capacity to engage in basic work activities"). At step four, the ALJ must determine whether the claimant's impairments prevent him from performing his past work. 20 C.F.R. § 404.1520(e). If the ALJ concludes the claimant is unable to perform his past relevant work, the ALJ moves to step five to determine whether there

are other jobs in the national economy that the claimant can perform. *Seavey*, 276 F.3d at 5. While the "claimant bears the burdens of production and persuasion at steps one through four," the burden shifts to the Commissioner at step five. *Sacilowski*, 959 F.3d at 434.

Additionally, the ALJ must articulate how persuasive she finds "all of the medical opinions and all of the prior administrative medical findings" in a claimant's case record. 20 C.F.R. § 404.1520c(b). When making this determination, the ALJ must consider four primary factors: consistency, supportability, the source's relationship with the claimant, and specialization. *Id.* § 404.1520c(c)(1)-(4); *see also id.* § 404.1520c(c)(5) (listing other factors the ALJ may consider, such as "evidence showing a medical source has familiarity with the other evidence in the claim"). Supportability and consistency "are the most important factors," and the ALJ must "explain how [she] considered" those factors "for a medical source's medical opinions . . . in [a claimant's] determination or decision." *Id.* § 404.1520c(b)(2). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinio[n]," the more persuasive that opinion will be. *Id.* § 404.1520c(c)(1) (supportability factor). Likewise, the "more consistent a medical opinio[n] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive" that opinion will be. *Id.* § 404.1520c(c)(2) (consistency factor).

## II. <u>Factual and Procedural Background.</u>

Ou was fifty-six years old when he applied for SSI and SSDI in 2022. *See* Administrative Record ("AR"), at 75-76.[1] He completed high school and some computer courses, and he worked as a computer technician at Philips Medical Systems for eighteen years. *Id.* at 51, 53, 57, 913-14. Throughout that time, and since 2006, Ou had been taking prescription medications for depression,

[1] The Administrative Record is docketed at ECF 8 through ECF 8-8.

schizophrenia, and paranoia, conditions that made it difficult for him to focus and caused him to work slowly. *Id.* at 62-63, 65. His supervisor at Philips permitted him to work more slowly than other coworkers. *Id.* at 63-65.

At the onset of the COVID-19 pandemic, Philips closed the plant where Ou worked and laid him off. *Id.* at 57-58. Although Philips offered him the same job in another state, Ou declined to relocate and testified that he could have continued working at Philips but for the plant closure. *Id.* at 30, 58. He subsequently worked as a computer technician for another company, and then as a cleaner, and was fired from both jobs—the former, for working too slowly, and the latter, for working too slowly and for posing safety risks when handling a ladder. *Id.* at 59-63.

Ou filed concurrent applications for SSDI and SSI on May 12, 2022, alleging disability since November 3, 2021, due to depression, schizophrenia, paranoia, and high cholesterol. *Id.* at 76. His claim was initially denied in January 2023 and on reconsideration in March 2024. *Id.* at 85, 93. In August 2024, Ou had a hearing before an ALJ. *Id.* at 45. Following that hearing, in December 2024, the ALJ issued a decision denying Ou's applications. *Id.* at 21-42. The ALJ determined, at the second step of the analysis, that Ou suffers from schizoaffective disorder, a severe mental impairment. *Id.* at 26. Nevertheless, the ALJ concluded that, when compliant with his medication regimen, Ou has "minimal to no symptoms that create more than minimal work-related difficulties." *Id.* at 28. Weighing the evidence before her, the ALJ determined at the fourth step that Ou had an RFC "to perform a full range of work at all exertional levels," with two non-exertional limitations: he "is able to attend and focus to complete simple and detailed, but not complex, tasks; and he is able to understand and remember simple and detailed, but not complex, tasks." *Id.* at 29. As a result, the ALJ concluded, Ou is unable to perform any past relevant work

but could hold other jobs in the national economy, including as a dining room attendant, grocery packer, or laundry worker. *Id.* at 36.

In formulating Ou's RFC, the ALJ noted Ou's testimony that he would have been able to continue working at Philips had the plant not closed, suggesting that he stopped working for reasons unrelated to his impairment. *Id.* at 31. She also evaluated the objective medical evidence and medical opinions, including, as relevant here, Gallagher's opinion. *Id.* at 34. Gallagher had completed a mental capacity assessment for Ou in May 2022. *Id.* at 408-10. She noted that when Ou takes his medications, he is "stable" and has only a moderate limitation on his ability to work at an appropriate and consistent pace or complete tasks in a timely manner. *Id.* at 409. If Ou does not take his medications, Gallagher added, this limitation would be marked because he would experience hallucinations and paranoia. *Id.* The assessment form defines "moderate" to mean a claimant's functioning in that area is "fair," and "marked" means "seriously limited." *Id.* at 408. Additionally, Gallagher opined that Ou could only occasionally lift or carry more than fifty pounds and that he would have occasional work absences. *Id.* at 412-13. The form defines "occasionally" as one-third of an eight-hour workday. *Id.* at 412.

The ALJ credited and discredited different portions of Gallagher's opinion. She found persuasive Gallagher's assessment of a moderate limitation on working at an appropriate and consistent pace, because Ou's psychological symptoms or medications may cause him to be distracted. *Id.* at 34. Accordingly, she determined that Ou could complete simple and detailed, but not complex, tasks. *Id.* However, the ALJ found the remaining limitations in Gallagher's opinion unpersuasive. A marked limitation on Ou's ability to work at an appropriate and consistent pace if he did not take his medications was, in the ALJ's view, unwarranted because the evidence showed that Ou was taking his medications and was stable when taking them. *Id.* The ALJ was also

unpersuaded by Gallagher's opinions as to physical limitations and occasional work absences, because there was no objective support for those assessments. *Id.*[2]

Following the Appeals Council's denial of Ou's request for review of the ALJ's decision in November 2025, that decision became the final decision of the Commissioner. Ou filed this action in January 2026 seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). ECF 1. The Commissioner moved to affirm that decision. ECF 13. After a hearing, the Court took the motion under advisement. ECF 23.

**STANDARD OF REVIEW**

The Social Security Act authorizes district courts "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's factual findings are "conclusive" if "supported by substantial evidence." *Id.* The Court's role is to determine "whether the final decision is supported by substantial evidence and whether the correct legal standard was used." *Seavey*, 276 F.3d at 9. Courts "review questions of law de novo, but defer to the Commissioner's findings of fact, so long as they are supported by substantial evidence." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000); *see Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (discussing "the substantial-evidence standard"). Such findings are not entitled to deference "'when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.'" *Sacilowski*, 959 F.3d at 437 (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)).

[2] On appeal, Ou does not dispute the ALJ's findings regarding Gallagher's opinions as to physical limitations and occasional work absences.

## DISCUSSION

Ou claims on appeal that the ALJ failed to adequately address the supportability and consistency factors when discussing Gallagher's opinion. "Supportability is the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023). "[C]onsistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Id.*; *see* 20 C.F.R. § 404.1520c(c)(1)-(2). Although an ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions," 20 C.F.R. § 404.1520c(b)(2), she need not expressly use the words "supportability" or "consistency" in her decision, so long as her reasoning is discernible. *See Shiebler v. O'Malley*, 761 F. Supp. 3d 235, 248 (D. Mass. 2024); *Thorley v. O'Malley*, No. 22-cv-10884-DJC, 2024 WL 1333511, at *10 (D. Mass. Mar. 28, 2024).

The ALJ adequately explained how she considered the supportability and consistency of Gallagher's opinion. Beginning with Gallagher's assignment of marked limitations on Ou's ability to work at an appropriate and consistent pace—the relevant portion of Gallagher's opinion that the ALJ discredited—the ALJ explained that this limitation was applicable, according to Gallagher, only if Ou did not take his medications. AR, at 34, 410. As the ALJ pointed out, Gallagher's narrative itself "indicates [Ou] is presently 'stable' on medications," such that a marked limitation on Ou's ability to work was not supported. *Id.* at 34, 409. The ALJ also described how the objective medical evidence confirms the same: notes from Ou's examinations and follow-ups from 2021 through 2024 indicate that he was taking his medications, he responded well to them, and he consistently appeared functional. *Id.* at 31-33; *see id.* at 568, 570, 592, 601-02, 615-17, 623, 644, 647, 665-67, 671, 674, 687, 866, 908, 913, 918. Thus, there was no "longitudinal evidence" of

"medication non-compliance," as the ALJ observed, such that any marked limitation on Ou's ability to work was inconsistent with the objective medical evidence. *Id.* at 34; *see also id.* at 31 ("I note the longitudinal medical evidence documents control and stability of symptoms with medication. The actual mental status exams have essentially been benign.").

Ou counters that the ALJ did not sufficiently discuss how Gallagher's opinion as to marked limitations was consistent with the evaluation of Dr. Hoekstra, the state agency psychologist who performed a psychological consultative examination in March 2024. This argument fails for two reasons. First, the ALJ expressly acknowledged Dr. Hoekstra's evaluation and concluded that she "provided no function-by-function assessment of the maximum [Ou] could do despite his impairments, or even a conclusory statement about whether or not his impairments render him disabled." *Id.* at 34-35. Thus, Dr. Hoekstra's evaluation did not identify any specific limitations for the ALJ to compare with Gallagher's opinion. Second, the observations in Dr. Hoekstra's evaluation are inconsistent with Gallagher's assessment of marked limitations and consistent with all the other medical evidence: Ou reported taking his medications and responding well to them. *Id.* at 912-14. In other words, nothing in Dr. Hoekstra's evaluation supported a marked limitation on Ou's ability to work at an appropriate and consistent pace, and the ALJ's explanation for discounting this portion of Gallagher's assessment is sufficient.

Next, Ou takes issue with the ALJ's discussion of Gallagher's assessment of moderate limitations on Ou's ability to work at an appropriate and consistent pace. The ALJ credited this portion of Gallagher's opinion, agreeing that moderate limitations were appropriate because of "possible distraction from psychological symptoms and/or medication side effects." *Id.* at 34. Accordingly, the ALJ found that Ou can attend to and focus on simple and detailed, but not complex, tasks. *Id.* And the ALJ incorporated that finding into the RFC, concluding that Ou has

the RFC "to perform a full range of work at all exertional levels," subject to two non-exertional limitations: he is able (1) "to attend and focus to complete simple and detailed, but not complex, tasks," and (2) "to understand and remember simple and detailed, but not complex, tasks." *Id.* at 29.

In Ou's view, however, the ALJ's analysis failed to grapple with the supportability and consistency of this part of Gallagher's opinion. This argument, too, is unavailing. In discussing Gallagher's view that Ou's medication resulted in a moderate limitation on his ability to complete tasks in a timely manner, the ALJ noted that this limitation would be incorporated into the RFC to account for "possible distraction from psychological symptoms and/or medication side effects." *Id.* at 34; *see also id.* at 32-33 ("I have accounted for possible decreased attention due to psychological symptoms in finding the claimant retains the capacity to attend and focus to complete simple and detailed, but not complex, tasks."). In so noting, the ALJ referenced Gallagher's medical explanation for the limitation, which was tied to his medication regimen—i.e., the supportability of that opinion. *Id.* at 34. And a finding that Ou can complete simple and detailed work is consistent with a moderate limitation on Ou's ability to work at an appropriate and consistent pace. *See Allison P. v. Berryhill*, No. 18-cv-00061-JHR, 2019 WL 1373646, at *4 (D. Me. Mar. 24, 2019) (rejecting argument that ALJ's limitations "to work involving simple one- or two-step instructions and to making only simple, work-related decisions . . . do not adequately account for [her] moderate limitations in concentration, persistence, or pace"); *Lacroix v. Barnhart*, 352 F. Supp. 2d 100, 111 (D. Mass. 2005) ("The positive description of Lacroix's ability to perform in certain areas of activity, so long as those activities are confined to 'simple' matters, is quite consistent with 'moderate' limitations in those same areas."). In addition, as the ALJ acknowledged, this finding and Gallagher's description of the limitation were consistent with Ou's

self-reporting. The ALJ explained that Ou "has, at times, denied medication side effects and has consistently exhibited normal memory and attention on mental status exams." AR, at 34; *see also id.* at 31-32. Thus, the ALJ's discussion of Gallagher's opinion regarding a moderate limitation referenced the consistency of that opinion with other record evidence regarding Ou's mental functioning.

Ou also argues that the ALJ's finding—that he is capable of simple and detailed, but not complex, work—is inconsistent with the testimony of a vocational expert, who opined that an individual completing only about 80% of the work that his coworkers completed would exceed employer expectations for off-task time and would likely be terminated. But Ou bears the burden of demonstrating that his impairments warrant such a limitation. *See Glacken v. Berryhill*, 382 F. Supp. 3d 116, 123 (D. Mass. 2019) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). He has neither argued, nor pointed to any record evidence suggesting, that his impairments cause him to be off-task 20% of the time. To the contrary, as the ALJ explained, the vocational expert testified that an individual with Ou's age, education, work experience, and RFC would be able to work as a dining room attendant, grocery packer, or laundry worker, which is consistent with the ALJ's finding that Ou can perform simple and detailed, but not complex, work. AR, at 36, 71.[3] Accordingly, substantial evidence supports the ALJ's findings and analysis regarding Ou's RFC.

[3] At the hearing, counsel for Ou raised two cases not cited in either party's brief. Neither alters the outcome in this case. First, in *Ealy v. Commissioner of Social Security*, the Sixth Circuit concluded that the ALJ's decision was not supported by substantial evidence because the hypothetical posed to the vocational expert did not adequately convey the claimant's limitations. 594 F.3d 504 (6th Cir. 2010). That reasoning has no bearing on this case because Ou does not argue that any hypothetical posed to the vocational expert inadequately conveyed his limitations; rather, he argues that the ALJ's RFC is inconsistent with the testimony of the vocational expert. *See* ECF 12, at 7. Second, in *Askew v. O'Malley*, the First Circuit rejected the plaintiff's argument that the ALJ failed to account for the differences in two physician's mental RFC assessment forms. No. 24-1051, 2024 WL 4362258 (1st Cir. Sept. 23, 2024). The proper focus, that court explained, is not on the form checkboxes indicating the degree to which an individual is limited, but on the

**CONCLUSION AND ORDER**

For the foregoing reasons, the Commissioner's motion to affirm his decision, ECF 13, is GRANTED. The Commissioner's decision is AFFIRMED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: November 24, 2026

narrative in which the physician explains the RFC. *Id.* But in this case, as discussed, the ALJ thoroughly explained her assessment of the moderate and marked limitations Gallagher assigned, as well as Gallagher's comments in the narrative sections of the form. *See* AR, at 34.